COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges Fulton, Lorish and White
Argued at Norfolk, Virginia


MALIK JAVON JOHNSON

                                                    MEMORANDUM OPINION* BY
v.        Record No. 0721-23-1                 JUDGE JUNIUS P. FULTON, III
                                                       SEPTEMBER 3, 2024
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF NORTHAMPTON COUNTY
W. Revell Lewis, III, Judge

Charles E. Haden for appellant.

Virginia B. Theisen, Senior Assistant Attorney General (Jason S.
Miyares, Attorney General, on brief), for appellee.


After a bench trial, the Circuit Court of Northampton County convicted Malik Javon

Johnson of possession of a firearm by a violent felon and maiming by mob. By final order entered

April 18, 2023, the trial court sentenced him to 15 years' imprisonment with 11 years and 6 months

suspended for maiming by mob, and the statutory mandatory minimum of 5 years for possession of

a firearm by a violent felon. On appeal, Johnson challenges the sufficiency of the evidence to

support both convictions. We see no error in the trial court's judgment and therefore affirm his

convictions.

---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

BACKGROUND[1]

On the morning of February 14, 2022, Devron Wallop ("Devron"), Qurnesha Davis, and their one-year-old son drove to a trailer park in Northampton County to view a prospective residence. As they exited the highway, they saw a black Crown Victoria sitting "already at the stop sign as if they was going onto the highway." After they entered the trailer park and got out of their vehicle, they saw the Crown Victoria "come back," pass by them, drive to the end of the street, and "s[i]t there." Devron told Davis that he "didn't feel comfortable," and prepared to leave. Before Devron and Davis left the trailer park, the Crown Victoria drove past ahead of them. Devron and Davis then drove away. Devron was driving, and Davis was in the front passenger seat with their son in her lap.

When Devron and Davis got to the stop sign at the highway entrance, the Crown Victoria was already there. Jadeen Wallop ("Jadeen")[2] stepped out from the Crown Victoria's rear passenger side door and fired a "compact size rifle" through the windshield of Devron's and Davis's vehicle. A bullet struck Davis's left arm, and she also was hit by shattered glass from the windshield.

Devron quickly drove away, and Davis called 911. The Crown Victoria pursued them at speeds of 85 to 90 miles per hour until such time as Devron was able to reach the Royal Farms in Exmore where he was directed by 911 dispatch to take Davis. The Crown Victoria then led multiple law enforcement vehicles on a high-speed chase, at times exceeding 100 miles per hour.

---

[1] On appeal, we recite the facts "in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). Doing so requires us to "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

[2] Jadeen is a distant relative of Devron.

During the chase, someone threw a firearm out of a driver's side window of the Crown Victoria into a ditch along Bayside Road.

The Crown Victoria eventually crashed into a ditch and was struck by a patrol car. Before the car stopped, Johnson jumped from the rear driver's side door and fled into the nearby trees. Jumelvion Brickhouse—who was driving—and Dashawn Holloway also fled on foot. Jadeen threw a firearm over the vehicle toward the tree line and attempted to flee, but was apprehended before he exited the vehicle.

Police officers subsequently caught Johnson in a field approximately a half mile from the crash site. Officers located Holloway and Brickhouse in a nearby residence and arrested them after a brief standoff. During a search of that residence, officers found a Zigana PX-9 firearm with an extended magazine inside a bag. Officers also seized a Russian model SKS rifle from the Crown Victoria, a Glock handgun near the crash scene, and a Smith and Wesson handgun in the ditch along Bayside Road.

A grand jury indicted Johnson for possession of a firearm by a violent felon, maiming by mob, and use of a firearm in the commission of a felony. At trial, Lieutenant Lewis testified that Johnson and Jadeen "were friends" and "h[u]ng out together." Lewis also testified that after Johnson was apprehended, he told Lewis that he "ran because he was scared."

Lieutenant Hallett testified that she reviewed surveillance footage showing that at approximately 2:36 a.m. on February 14, 2022, the Crown Victoria arrived at a convenience store in Cape Charles, where Jadeen and Johnson exited the car. The two subsequently reentered the Crown Victoria, and at 2:51 a.m., a camera captured Brickhouse driving through the Chesapeake Bay Bridge-Tunnel. Hallett further testified that surveillance footage showed Johnson, Jadeen, and Holloway exit the Crown Victoria and enter a gas station convenience store at 4:13 a.m.

Subsequent forensic analysis determined that Johnson could not be eliminated as a contributor to the DNA profile found on the Smith and Wesson firearm. Analysis of a gunshot residue kit determined that two "particles characteristic of primer residue" and three "particles consistent with primer residue were found" on Johnson's right hand. One "particle characteristic of primer residue" and one "particle consistent with primer residue" were found on his left hand.

The Commonwealth played surveillance footage of the trailer park on the morning of February 14, 2022. Devron and Davis arrived at 9:48 a.m. Approximately one minute later, the Crown Victoria drove by the entrance. At 9:50 a.m., Devron and Davis reentered their vehicle, and the Crown Victoria drove by the entrance in the opposite direction. Devron and Davis then left the trailer park in the same direction as the Crown Victoria. The Commonwealth also played dashboard camera footage from two police vehicles involved in the chase.

At the close of the Commonwealth's case, Johnson moved to strike the evidence. He argued that the Commonwealth failed to prove that he was a member of a mob because the evidence did not show any common goal or purpose among the occupants of the Crown Victoria. Rather, Johnson argued that he was merely a passenger in the Crown Victoria when Jadeen exited and shot Davis. Accordingly, Johnson argued that the Commonwealth established only Jadeen's "individual assaultive conduct."

Johnson further asked the trial court to dismiss the charge of using a firearm in the commission of a felony. Regarding the charge of being a violent felon in possession of a firearm, the defense stated: "you have the DNA evidence, you have the gunshot residue evidence that has been introduced." Defense counsel "submit[ted]" that charge "to the [trial] court on the evidence that the court . . . heard."

The trial court denied Johnson's motion to strike the evidence of possession of a firearm by a violent felon and maiming by mob, and convicted him of those offenses. However, the trial court

- 4 -

agreed with Johnson's arguments that the evidence was insufficient to establish the use of a firearm in commission of a felony and ultimately found Johnson not guilty of that charge. On appeal, Johnson challenges the sufficiency of the evidence to sustain his convictions for possession of a firearm by a violent felon and maiming by mob.

## ANALYSIS

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Id.* (alteration in original) (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan*, 72 Va. App. at 521 (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

### I. Maiming by mob

Under Code § 18.2-41, "[a]ny and every person composing a mob which shall maliciously or unlawfully shoot . . . any person . . . with intent to maim, disable, disfigure or kill him, shall be guilty of a Class 3 felony." To convict a defendant under this statute, the Commonwealth must prove that he "was a member of a group composing a mob; that the mob caused the victim bodily injury; and that the mob acted with the malicious intent 'to maim, disable, disfigure or kill' the

victim." *Commonwealth v. Leal*, 265 Va. 142, 146 (2003) (quoting Code § 18.2-41). Put differently, because "the mob is the criminal actor," Code § 18.2-41 "imposes 'individual liability based on collective act and intent.'" *Paiz v. Commonwealth*, 54 Va. App. 688, 697 (2009) (quoting Ronald J. Bacigal, *Virginia Practice: Criminal Offenses and Defenses* 523 (2008-2009)).

"A 'mob' is statutorily defined as '[a]ny collection of people, assembled for the purpose and with the intention of committing an assault or a battery upon any person or an act of violence as defined in [Code] § 19.2-297.1[.]'" *Barnett v. Commonwealth*, 73 Va. App. 111, 118 (2021) (alterations in original) (quoting Code § 18.2-38). "The existence of a mob is a question of fact 'evaluated on a case-by-case basis.'" *Id.* (quoting *Johnson v. Commonwealth*, 58 Va. App. 625, 635 (2011)). "Whether a group of individuals has been so transformed into a 'mob' depends upon the circumstances; no particular words or express agreements are required to effect a change in a group's purpose or intentions." *Johnson v. Commonwealth*, 58 Va. App. 303, 320 (2011) (quoting *Harrell v. Commonwealth*, 11 Va. App. 1, 7-8 (1990)).

Importantly, "[n]ot every incidence of group violence or assaultive conduct" involving multiple people constitutes maiming by mob. *Harrell*, 11 Va. App. at 7. "The statutory definition of a mob requires that the act of assembling be done for a specific purpose and with a specific intent—to commit an assault or a battery" without lawful authority. *Hamilton v. Commonwealth*, 279 Va. 94, 103 (2010) (quoting *Harrell*, 11 Va. App. at 6). The requirement that the Commonwealth prove that a group assembled with this common unlawful purpose "is critical" because once a mob forms, "every person composing the mob becomes criminally culpable even though the member may not have actively encouraged, aided, or countenanced the act." *Harrell*, 11 Va. App. at 8.

Viewed in the light most favorable to the Commonwealth, the evidence in this case establishes that Johnson, Brickhouse, Holloway, and Jadeen met during the course of the early

morning,[3] each ultimately possessing his own weapon.  The group stalked Devron and Davis, driving by them twice, before subsequently waiting for them at the exit to the highway when Davis drove away from the trailer park.  When Devron and Davis pulled up to the stop sign, Jadeen exited and fired repeatedly at the vehicle, ultimately striking Davis once with a bullet.  Thereafter, the four perpetrators chased Devron and Davis, and only ceased the chase when the police began pursuing them.  The weapon containing Devron's DNA was thrown out the window during the police chase.  And after the vehicle came to a stop, Johnson, along with the other three, attempted to flee the scene.

The Commonwealth asserts that multiple pieces of circumstantial evidence established that the group assembled with the requisite specific intent: the members of the group had four firearms between the four of them, one of which contained a DNA sample for which Johnson could not be eliminated as a contributor; the Crown Victoria "stalked" Devron's and Davis's vehicle before the shooting and pursued it after; the Crown Victoria fled from the police; and Johnson, along with the other three perpetrators, only left the vehicle when it crashed but then continued their flight on foot after the vehicle crashed.

We agree.  A rational factfinder could conclude that because there were four firearms in the Crown Victoria at the time of the shooting, each individual possessed one of the firearms. Further, based on the behavior of the individuals, as reflected in the movements of the vehicle itself, leading up to the shooting, a reasonable factfinder could infer that the four individuals assembled with the collective intent to assault Devron and Davis.  Further, not only were Johnson and Jadeen friends, but after riding around for several hours together with firearms, none of the individuals decided to exit the vehicle before the stalking or even after the shooting

---

[3] The Commonwealth presented evidence that Johnson, Jadeen, Brickhouse, and Holloway assembled and were together for at least seven hours before the shooting.

occurred. Moreover, after the Crown Victoria "stalked" Devron and Davis, it chased them after the shooting, and led the police on a high-speed chase.

As the Commonwealth notes, after the Crown Victoria fled from the police, Johnson also joined the other occupants of the vehicle and fled on foot. It is well-established that a factfinder can consider flight as evidence of a defendant's consciousness of guilt. *See Turman v. Commonwealth*, 276 Va. 558, 565 (2008); *Ricks v. Commonwealth*, 39 Va. App. 330, 335 (2002). A rational factfinder could conclude that Johnson's flight evinced his consciousness of guilt of unlawfully possessing a firearm as a convicted violent felon, or as an accomplice to either the shooting or the ensuing flight from the police.

In sum, the evidence, viewed in the light most favorable to the Commonwealth, established that Johnson, as one of four people in the Crown Victoria when Jadeen shot Davis through the windshield of her vehicle, was a member of a mob that had assembled with the specific intent and for the specific purpose of committing an act of violence. *See* Code § 18.2-38. Accordingly, we affirm Johnson's conviction for maiming by mob.

## II. Violent felon in possession of a firearm

Johnson also contends that the Commonwealth failed to prove that he actually or constructively possessed a firearm. As Johnson concedes, he did not raise this argument in the trial court. "No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." Rule 5A:18. "The purpose of this contemporaneous objection requirement is to allow the trial court a fair opportunity to resolve the issue at trial, thereby preventing unnecessary appeals and retrials." *Creamer v. Commonwealth*, 64 Va. App. 185, 195 (2015) (citing *Perry v. Commonwealth*, 58 Va. App. 655, 666-67 (2011)). "Not just any objection will do." *Bethea v. Commonwealth*, 297 Va. 730, 743

(2019) (quoting *Dickerson v. Commonwealth*, 58 Va. App. 351, 356 (2011)). "Procedural-default principles require that the argument asserted on appeal be the same as the contemporaneous argument at trial." *Id.* (citing *Riner v. Commonwealth*, 268 Va. 296, 325 (2004)).

Johnson asks this Court to apply the ends of justice exception to Rule 5A:18. "The 'ends of justice' exception to Rule 5A:18 is 'narrow and is to be used sparingly.'" *Melick v. Commonwealth*, 69 Va. App. 122, 146 (2018) (quoting *Pearce v. Commonwealth*, 53 Va. App. 113, 123 (2008)). Whether to apply the ends of justice exception involves two questions: "(1) whether there is error as contended by the appellant; and (2) whether the failure to apply the ends of justice provision would result in a grave injustice." *Commonwealth v. Bass*, 292 Va. 19, 27 (2016) (quoting *Gheorghiu v. Commonwealth*, 280 Va. 678, 689 (2010)). "The burden of establishing a manifest injustice is a heavy one, and it rests with the appellant." *Holt v. Commonwealth*, 66 Va. App. 199, 210 (2016) (en banc) (quoting *Brittle v. Commonwealth*, 54 Va. App. 505, 514 (2009)). "In order to show that a miscarriage of justice has occurred, an appellant must demonstrate more than that the Commonwealth *failed* to prove an element of the offense." *Redman v. Commonwealth*, 25 Va. App. 215, 221 (1997). Rather, the appellant must show either that he "was convicted for conduct that was not a criminal offense or [that] the record . . . affirmatively prove[s] that an element of the offense did not occur." *Id.* at 222. Here, possession of a firearm by a formerly convicted violent felon is indeed a criminal offense. And further, given the circumstances—(1) that Johnson was present, along with three other individuals, in the Crown Victoria; (2) that officers observed a Smith and Wesson handgun being thrown from the vehicle during the police chase; (3) that Johnson ran from the police after the vehicle crashed; (4) that Johnson could not be eliminated as a contributor to the DNA profile found on the Smith and Wesson firearm; and (5) that Johnson's hands tested positive for the presence of gunshot residue—

- 9 -

the record does not affirmatively prove that an element of this offense did not occur. Johnson's argument that the Commonwealth failed to prove that he actually or constructively possessed a firearm does not meet the ends of justice exception standard. Accordingly, he cannot invoke the ends of justice exception to Rule 5A:18 and we do not consider this assignment of error.

## CONCLUSION

Accordingly, we affirm Johnson's convictions for possession of a firearm by a violent felon and maiming by mob.

*Affirmed.*